**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CATHERINE J. ZANG, et al.,                                    Case No. 11-cv-884

           Plaintiffs                                         Dlott, J.
                                                              Bowman, M.J.
   v.

JOSEPH ZANG, et al.,

        Defendants

**REPORT AND RECOMMENDATION**

Plaintiff Catherine J. Zang, personally and as mother and next friend of three children, identified as A.R., J.C., and J.M. Zang, initiated this lawsuit on December 17, 2011. A total of nine individuals including Ms. Zang and her three minor children, Zachary Holbrock, Douglas Holbrock, Jennifer Holbrock, Beverly Holbrock, Mary McDonald, and Susan Roberts, were named as Plaintiffs in the original complaint. (Doc. 1). Plaintiffs were initially represented by Donald Roberts, an attorney who has since been identified as Catherine Zang's brother. Four individuals and three entities were named as Defendants: Joseph C. Zang,[1] Carla Bergmann, Michael McCafferty, Mary Jill Donovan, Joseph Zang Custom Builders, Zang General Contractors, Inc., and Donovan Law. (*Id.*).

This case has been referred to the undersigned magistrate judge for "all pretrial and post-judgment motions and procedures, whether dispositive or not." (Doc. 42).

---

[1]Joseph C. Zang is Catherine's ex-husband. Joseph O. Zang is her ex-father-in-law. Joseph O. Zang is not a Defendant in Case No. 1:11-cv-884, although the pending motion for summary judgment refers to his testimony. Joseph O. Zang was for a time a defendant in a related case, Case No. 12-cv-629. To avoid confusion, the Court will include the Defendant's middle initial and will identify him as "Joseph C. Zang," while the more senior Joseph is hereinafter referred to as "J. O. Zang."

Currently pending before the undersigned is a motion for summary judgment filed by two of the entity Defendants (together "Zang companies"), Joseph Zang Custom Builders and Zang General Contractors, Inc.  Unrelated to that motion, this R&R also recommends the revocation of the pro hac vice status of attorney Andrew Smith, based upon his failure to respond to the Court's last order requiring him to show cause why his pro hac vice status should not be revoked.  Because both the pending motion for summary judgment and the proposed revocation of Mr. Smith's pro hac vice status require it, the background of this case is set forth in some detail.

## I. Background

This federal case grew out of underlying divorce and custody proceedings between Catherine Zang and Joseph C. Zang in the Hamilton County Ohio Court of Common Pleas.  During those state court proceedings, Plaintiff Catherine Zang learned that her now ex-husband had installed audio and video surveillance equipment in the marital residence, and spyware on a home computer.  In Case No. 1:11-cv-884, Plaintiff Catherine Zang and the additional Plaintiffs asserted claims against all Defendants under the federal Wiretap Act and related state law, based upon the alleged interceptions of private communications during the 2009 calendar year.[2]

Some of the evidence produced from the surveillance in the underlying divorce proceedings was a collection of emails and messages between Catherine Zang and a resident of Florida, Javier Luis.  Although Mr. Luis was not a Plaintiff in the Ohio case first filed by Catherine Zang, he subsequently filed separate *pro se* actions against

___

[2]The complaint is vague as to the specific dates during which allegedly illicit recordings were made, but includes allegations that the parties ceased sharing a residence at the end of 2009, and that Catherine Zang discovered the surveillance equipment and was informed of the intercepted conversations and other material in December of the same year.

many of the same defendants in both federal and state court in Florida. The defendants in the Florida state action removed to federal court, and the Florida federal court consolidated its two cases. On August 20, 2012, the federal district court in Florida transferred Mr. Luis's consolidated case to this district based upon the lack of personal jurisdiction over the defendants, and improper venue in Florida. (Docs. 63, 64 in Case No. 1:12-cv-629). Mr. Luis's case was thereafter consolidated for purposes of pretrial proceedings with the above-captioned Case No. 11-cv-884. (Doc. 101). At this time, no claims against any Defendants remain in Mr. Luis's case, leaving only the claims and parties in Case No. 1:11-cv-884 still pending.[3] Mr. Luis is not and has never been a Plaintiff in the above-captioned case; therefore all references to parties and to docket numbers in this R&R, except as specifically noted, are to Case No. 1:11-cv-884. (Doc. 173).

Two Columbus, Ohio attorneys answered the complaint in Case No. 1:11-cv-884 on behalf of Defendants Joseph C. Zang and Joseph Zang Custom Builders. (Doc. 8). Shortly thereafter, Zang General Contractors, Inc. filed its answer, represented by different counsel, Charles C. Ashdown of Strauss & Troy, LPA. (Doc. 18). Defendants Joseph C. Zang and Joseph Zang Custom Builders moved to file a third-party complaint against Donald Roberts, which motion was granted. (Docs. 24, 25).

The third-party complaint alleges that prior to his divorce, Joseph C. Zang employed his then-brother-in-law, Donald Roberts, as counsel. Allegedly pursuant to Mr. Roberts's advice, Joseph C. Zang states that he installed monitoring software in his marital home. (Doc. 25). In light of the likely role of Roberts as a witness in the underlying litigation, the Court granted Defendants' motion to disqualify Mr. Roberts as

---

[3] For reasons that are unclear to the undersigned, Case No. 1:12-cv-629 has not yet been formally closed.

Plaintiffs' counsel of record. (Doc. 30). On October 9, 2012, Jennifer Coriell entered her appearance as substitute counsel on behalf of the Plaintiffs in Case No. 1:11-cv-884.

On March 5, 2013, Andrew M. Smith paid the requisite filing fee and moved for admission pro hac vice on behalf of individual Defendant Joseph C. Zang, and two companies: Joseph Zang Custom Builders, and Joseph Zang Builders. (Doc. 61). Joseph Zang *Builders* is not a named Defendant in Case No. 1:11-cv-884,[4] although Joseph Zang *Contractors* is a Defendant. In any event, Mr. Smith's motion for admission pro hac vice was granted on May 8, 2013. (Doc. 77). A related notice of substitution of counsel reflects the substitution of Mr. Smith in place of the Columbus, Ohio counsel for Defendants Joseph C. Zang and Joseph Zang Custom Builders in this case, as well as for Joseph Zang Builders in Case No. 1:12-cv-629.[5] (Doc. 63).

Currently pending before this Court is the joint motion of the two Zang company Defendants, Joseph Zang Custom Builders and Zang General Contractors, for summary judgment. The motion was filed by Charles Ashdown, previously counsel to Zang General Contractors, but was filed on behalf of both entities. Thus, with said motion, Mr. Ashdown entered his appearance on behalf of Joseph Zang Custom Builders, an entity previously represented Mr. Smith alone since the withdrawal of its Columbus counsel. Plaintiffs have filed a response, to which both Defendants have filed a reply.[6]

---

[4]Joseph Zang Builders was brought in as a Defendant in an amended complaint filed by Mr. Luis in Case No. 1:12-cv-629. (Doc. 12 in Case No. 1:12-cv-629).

[5]The Notice also references the substitution of Mr. Smith for Lara Tibbals, a Florida attorney who apparently represented one or more of the Defendants in Case No. 1:12-cv-629 but not in Case No. 1:11-cv-884. Ms. Tibbals and co-counsel filed a Notice of Withdrawal from representation in both associated cases on March 4, 2013. (Doc. 60).

[6]The reply memorandum marks the addition of attorney Stephen Schilling, of the same firm as Mr. Ashdown. Thus, as of September 2, 2014, Mr. Schilling also represents both Zang companies.

For the reasons that follow, the undersigned recommends that Defendants' motion for summary judgment be granted.  Although unrelated to the pending motion, the undersigned further recommends that the pro hac vice status of Andrew M. Smith, presently listed as counsel for Joseph C. Zang and Joseph Zang Custom Builders in this case, be revoked.  For the convenience of the Court, the latter issue will be addressed first.

**II.  Analysis**

**A.  The Pro Hac Vice Status of Andrew M. Smith and**
**Additional Sanctions Against Joseph C. Zang**

On October 22, 2014, the undersigned filed a nine-page Memorandum Order granting Plaintiffs' second motion to compel and for sanctions against Defendant Joseph C. Zang.  (Doc. 193).  Defendant Joseph C. Zang is represented exclusively by Andrew M. Smith, a Pennsylvania attorney granted leave to appear pro hac vice in this Court.  Mr. Smith also represents Defendant Joseph Zang Custom Builders, but that entity is simultaneously represented by two attorneys from Strauss & Troy.

The grounds stated in the prior Order will not be fully repeated here.  Briefly, however, sanctions were based upon Joseph C. Zang's repeated failures to fully respond to discovery and to appear for his deposition, in defiance of the prior Orders of this Court, and Mr. Smith's role in that conduct.  In addition, the undersigned warned Mr. Smith that his pro hac vice status was likely to be revoked based upon counsel's own repeated failure to appear as directed and the inability of opposing counsel (and of this Court) to reach him despite numerous attempts.

After remarking that "Mr. Smith's conduct to date offers little alternative" to revoking his admission, the undersigned offered Mr. Smith one last chance to "show

cause" why his pro hac vice status should not be revoked, and additional more draconian sanctions imposed.  Specifically, the undersigned directed Mr. Smith to "SHOW CAUSE on or before **November 3, 2014** as to why the undersigned should not recommend both the revocation of his pro hac vice status in this Court, and the imposition of one or more of the non-monetary sanctions against him and/or his client as authorized by Rule 37(b)(2)(A)."  (Doc. 193 at 9).

Consistent with past practice, Mr. Smith has once more declined to offer any response to this Court's Order.  For that reason, and based upon the multitude of prior offenses set forth in the October 22, 2014 Memorandum Order, the undersigned recommends that the pro hac vice admission of Mr. Smith be REVOKED, and that he not be permitted to practice again in this Court in any case absent the addition of local co-counsel.  The undersigned is well aware that the revocation of Mr. Smith's pro hac vice admission to this Court will leave one of his clients, Joseph C. Zang, proceeding *pro se*, as Mr. Smith alone represents that Defendant.  While that may be unfortunate for Defendant Joseph Zang, it is a consequence that should not have been unanticipated, and Mr. Zang is by no means blameless in the series of events leading to this recommendation.

In fact, based upon the failure of Mr. Smith or his client to show cause why additional non-monetary sanctions should not be imposed against Joseph C. Zang for his continued and repeated failure to appear for his deposition in this case, and for other discovery failures previously recounted, the undersigned also recommends that the presiding district judge impose such sanctions immediately.  Specifically, the Court should prohibit Joseph C. Zang from introducing any evidence on his behalf not previously provided to Plaintiffs, including his own testimony, or alternatively, should

6

strike the portions of the answer (Doc. 8) that relate to Joseph C. Zang, or render a default judgment against Joseph C. Zang. *See generally* Rule 37(b)(2)(A)(ii), (iii), and (vi), Fed. R. Civ. P.

In contrast to the sanctions recommended against Joseph C. Zang and Mr. Smith, no sanctions are recommended against Defendant Joseph Zang Custom Builders.  Unlike the repeated failures of the individual Defendant to participate in discovery, the record does not reflect a string of similar complaints against that company, from which no discovery was sought.  Moreover, Joseph Zang Custom Builders is represented not only by Mr. Smith, but by more able counsel who have filed a persuasive motion for summary judgment on that company's behalf.

### B.  Motion for Summary Judgment

On June 16, 2014, Defendants Zang General Contractors, Inc. and Joseph Zang Custom Builders filed a motion for summary judgment.  (Doc. 179).  After initially failing to file any timely response, (Doc. 186), Plaintiffs were granted leave to file a belated response in opposition on August 22, 2014.  (Doc. 191).  On September 2, 2014, the Zang companies filed a reply.  (Doc. 192).

#### 1.  Summary Judgment Standard

On summary judgment, a court must determine whether there is any genuine issue as to any material fact in dispute.  *See* Rule 56(c), Fed. R. Civ. P.  In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party."  *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted).  "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

7

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.* In this case, summary judgment should be granted to the Zang companies based upon the uncontested evidence filed in support of their motion.

## 2. Allegations Against Zang Company Defendants

As the Zang companies assert, Plaintiffs' complaint "barely mentions" either of them. Since the entirety of the complaint arises from surveillance information used and/or disclosed by Joseph C. Zang in the course of state court proceedings involving his divorce from Catherine Zang, most of the complaint naturally concerns the conduct of individual Defendant Joseph C. Zang. The other individuals named as Defendants are identified as Joseph C. Zang's sister, Carla Bergmann, and Joseph C. Zang's attorneys, Mary Jill Donovan and Michael McCafferty. The only entity named as a Defendant other than Zang General Contractors and Joseph Zang Custom Builders is the law firm that employs the identified attorneys.

Under a "Personal Jurisdiction and Venue" section, the complaint defines the parties as including the two Zang companies, describing each entity in nearly identical terms:

> l. Defendant JOSEPH ZANG CUSTOM BUILDERS (hereinafter "Joseph Zang Builders") is a business operating under the laws of Ohio, with its principal place of business in Cincinnati, Hamilton County, Ohio. On information and belief, Mr.[Joseph C.] Zang is a managing member with ownership interest in the company.
>
> m. Defendant ZANG GENERAL CONTRACTORS, INC. (hereinafter "Zang

8

Contractors") is a business operating under the laws of Ohio, with its principal place of business in Cincinnati, Hamilton County, Ohio. On information and belief, Mr. [Joseph C.] Zang is a managing member with ownership interest in the company.

(Doc. 1 at 4).

Under a section of "General Allegations," the Complaint briefly refers to the two

companies as follows:

JOE [Joseph C.] ZANG and CARLA BERGMANN, through ZANG CONTRACTORS and ZANG BUILDERS purchased the software and surveillance equipment and used company tools and equipment to secretly install, monitor and intercept communications between or among CATHY ZANG and the other Plaintiffs set forth herein and/or between or among those Plaintiffs themselves (without CATHY ZANG's participation).

(Doc. 1, ¶3(f) at 6-7).

In the same section, the complaint further alleges:

JOE [Joseph C.] ZANG and CARLA BERGMANN, by and through ZANG BUILDERS and ZANG CONTRACTORS intercepted, reviewed and created permanent recordings of said communications without the knowledge or consent of the Plaintiffs constituting: and invasion of Plaintiffs' privacy, including trespass into the Plaintiffs' seclusion, and public disclosure of private facts; and a violation of the federal Wiretap Act and the Ohio Revised Code 2933.52.

(Doc. 1, ¶3(m) at 8). The complaint also generally alleges that "Defendants" violated

the federal Wiretap Act, violated all Plaintiffs' right to privacy, and conspired to invade

Plaintiffs' privacy, in violation of Ohio Revised Code §2933.52, and entitling Plaintiffs to

statutory damages under O.R.C. §2933.65.

### 3. Plaintiff's Failure of Evidence

Defendants persuasively argue that no evidence exists to support Plaintiffs'

claims against the Zang companies. In response to Defendants' discovery requests for

evidence to support Plaintiffs' allegations, Plaintiffs produced no evidence. (Doc.179-1).

In response to requests to identify all witnesses or expert witnesses, Plaintiff Catherine

Zang responded "unknown at this time."  (Doc. 179-1 at 8).  In response to a request for facts supporting Plaintiffs' allegation "that tools belonging to" the Zang companies were used to install the alleged audio and video equipment, Catherine Zang responded "Joe (C.) claimed that every tool belonged to his father's business and that no tools were subject, according to Joe (C.), or made available by Joe (C.) in the division of marital property at the end of the divorce."  (*Id.* at 8). However, the fact that Defendant Joseph C. Zang allegedly claimed[7] that no tools were subject to the division of marital property during the dissolution of his marriage is not evidence that tools owned by the Zang companies were used to install the audio and video equipment at issue in this lawsuit.[8]

In response to Defendants' interrogatory requesting facts supporting Plaintiffs' allegation that the Zang companies (and not some other individual or entity) purchased the offending audio and video equipment, Catherine Zang states: "Personal knowledge & Joe's (C.) claims that he used the office at Joe and Mary's & had consulted with them."  (Doc. 179-1 at 9).  Again, any "claim" by Defendant Joseph C. Zang that he "used the office" at his parents' home when he purchased the offending equipment and "consulted with" his parents prior to the purchase is not evidence that either of the Zang company Defendants purchased the offending equipment.

In response to a request for facts that support her allegation that Defendant's father (J.O. Zang) "intercepted, reviewed, and created permanent recordings…by or through" the Zang entities, Catherine Zang referred to unspecified "statements made by Joe (C.) that he reviewed tapes at the office (also the home of Joe & Mary Zang)."

---

[7]Plaintiffs have failed to produce any evidence of the alleged statement by Defendant Joseph C. Zang in response to the Zang companies' pending motion.

[8]There is no indication of what type of "tools" may have been needed or used, to the extent that any tools were needed or used at all.

Assuming that Plaintiffs can produce such "statements" (which have not been produced in response to Defendants' motion), a statement by Defendant Joseph C. Zang that he reviewed surveillance tapes at his parents' home office is *not* evidence that either of the Zang companies participated in the alleged conduct or are liable on any claims.

In contrast to Plaintiffs' allegations, Defendants have offered evidence, through the testimony of J.O. Zang, that neither Zang General Contractors, Inc. nor Joseph Zang Custom Builders took part in the purchase or installation of the surveillance equipment, or in the subsequent interception or disclosure of information from Plaintiffs through the use of such spyware.  In their response in opposition, Plaintiffs similarly cite to discovery obtained from J.O. Zang[9] to support their claims.  However, the record does not reflect any disputed issues of material fact sufficient to defeat summary judgment.  Most of the deposition testimony on which Plaintiffs rely reflects that the two Zang companies are small, closely held corporations primarily operated out of a basement office located in J.O. Zang and Mary Zang's residence.  (Tr. at 14-15).  J.O. Zang established Zang General Contractors in 1981.  (Doc. 191-1, Deposition at 12). He testified that at some point after his retirement from Zang General Contractors, Defendant Joseph C. Zang became President of that entity.  (Id. at 11-13).  After Joseph C. Zang stepped down as President, his sister Carla Bergmann became President.

Plaintiffs make much of allegedly contradictory testimony and what Plaintiffs describe as "intentional" vagueness by J.O. Zang concerning whether the two Zang companies are separate or the same, and as to what corporate formalities may have

---

[9]It is noteworthy that Plaintiffs never served either Zang company with any discovery requests.  Plaintiffs' time for obtaining such discovery has long expired; the original discovery deadline expired on January 15, 2014 (Doc. 72) and was extended by agreement only to May 30, 2014 (Docs. 156, 158).

been observed or neglected, and just how involved Defendant Joseph C. Zang was in the day-to-day operations of both companies.  It is clear from reading the transcript of the deposition that J.O. Zang, who was 82 years old at the time of his deposition and frequently asked counsel to repeat her questions, struggled with recall of dates and details of corporate formalities.  Whether or not his struggles were intentional cannot be easily ascertained from a written transcript, but ultimately, that issue is irrelevant to the question presented in Defendants' motion for summary judgment.

J.O. Zang testified that "at some point" between 2008 and 2010, Defendants Joseph C. Zang and Carla Bergmann were President and Secretary/Treasurer, respectively, of Zang General Contractors.  (*Id.* at. 38-49).  Although tax returns from 2007-2010 reflected that J.O. Zang was the sole officer of Zang General Contractors, the corporate minutes produced by J.O. Zang reflect that Joseph C. Zang was the President of the company at all times relevant to this lawsuit.  Whatever their respective roles, both individual Defendants (Bergmann and Joseph C. Zang) had the authority to make purchases and/or to write checks on behalf of Zang General Contractors.  (*Id.* at 53-57).

As previously stated, the installation of the surveillance spyware and/or equipment is alleged to have occurred not later than 2009, since it was discovered and allegedly used in the divorce proceedings in December 2009.  A key portion of evidence on which Defendants rely is J.O. Zang's response to a deposition question about whether he knew if his son had purchased surveillance equipment through Zang General Contractors.  J.O. Zang responded emphatically, "I know damn well he didn't." (Tr. 104).  When asked how he knew that, he responded, "there's no – no bills come through there of anything."  (Tr. 104-105).

12

Plaintiffs point to testimony that J.O. Zang did not review company bills until after this lawsuit was filed. (Tr. 105). Plaintiffs complain that J.O. Zang's deposition testimony is simply not credible, and that summary judgment should be denied on the basis that a reasonable jury could disbelieve his testimony. "For a man who did not even remember when he was president or CEO of the corporation or who cut what checks, Plaintiffs assert that this one substantive answer cannot be considered as anything by [sic] incredible and disingenuous by this Court." (Doc. 191 at 7). Plaintiffs point to further evidence from the corporate minutes dated October, 2011 and September and December, 2012 - long after initiation of divorce proceedings and even longer after the alleged illicit surveillance - that reflect that officers were changed to make J.O. Zang President of Zang General Contractors, and to remove Joseph C. Zang from any officer position. In 2013, the minutes confirmed a change to Carla Bergmann, J.O. Zang, and Mary Zang as sole officers, with Defendant Joseph C. Zang no longer listed. Prior to the removal of Joseph C. Zang from the roster of officers, corporate minutes reflect discussion of "lawsuit and HWH bill." (Doc. 191-3 at 68). Discussion of the litigation between Joseph C. Zang and Catherine Zang also was included in corporate minutes dated September 10, 2013, September 13, 2013, and December 4, 2013. (Doc. 191-3 at 69-71).

Without any specific citation, Plaintiffs allude to testimony by J.O. Zang that Zang General Contractors "was a sub-business of [Joseph Zang Custom Builders], which was owned by" Defendant Joseph C. Zang. (Doc. 191 at 11). Plaintiffs conclude that "there is a genuine issue of material fact as to whether [the Zang companies] participated, either with or without [J.O. Zang's] personal knowledge, in the purchase of, installation of, and surveillance of Plaintiffs." (Doc. 191 at 11). Plaintiffs argue that "there certainly

13

is a multitude of evidence that demonstrates both the comingling of assets and funds of [the two Zang companies], as ...controlled jointly or severally, by Joseph C. Zang, [J.O.] Zang, Mary Zang, and Carla Bergmann."  (Doc. 191 at 12-13).  Plaintiffs insist that because individual Defendants Joseph C. Zang and Carla Bergmann maintained control over the Zang companies and could make purchases for Zang General Contractors, there remains an issue of fact as to whether the brother and sister used one or both of the two Zang companies to purchase and install the software and equipment allegedly used to conduct illegal surveillance.

Notwithstanding Plaintiffs' theories, the two Zang companies are entitled to summary judgment because Plaintiffs have presented no evidence at all to support their speculative theories.  For example, Plaintiffs offer no evidence to support their theory that the individual Defendants did in fact use one or both company accounts to purchase the spyware and/or surveillance equipment for Joseph C. Zang's use in the marital home, or that either company's tools were used to install such equipment, or that either company (rather than individual Defendants Carla Bergmann and Joseph C. Zang) intercepted or created recordings of Plaintiffs' confidential communications.   The only testimony that relates to the allegations against the two Zang companies is the unequivocal deposition testimony of J.O. Zang that funds from the accounts of Zang General Contractors were not used to purchase surveillance equipment. Plaintiffs are free to disbelieve that testimony, but a plaintiff cannot defeat summary judgment "without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant's denial of a conspiracy or of legal malice." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986).

Thus, in the absence of any contrary evidence put forth by Plaintiffs to support their claims, the undersigned concludes that judgment should be granted in favor of the two Zang companies.

### 4. Related Case Analysis

Plaintiffs' claims against the two Zang companies are based on allegations that the two individual Defendants (Carla Bergmann and Joseph C. Zang) violated the federal Wiretap Act and/or state privacy laws by intercepting and/or recording Plaintiffs' communications "through" the closely held companies, by using company funds and/or tools to purchase and/or install the software/equipment used for the interceptions and/or recordings. While not raised by the companies in the pending motion, this Court's prior dismissal of the spyware manufacturer in related Case No. 1:12-cv-629 calls into question whether Plaintiffs' allegation that the individual Defendants took action "through" the two companies is sufficient to state a claim against either entity, regardless of whether company assets were used. In the related case, the undersigned expressly noted the limited scope of private civil remedies available under the federal and state laws upon which Plaintiffs rely. (*See generally* 1:12-cv-629, Doc. 109, excluding manufacturers and distributers of software, and suggesting Plaintiff would need to show the corporation had actual knowledge of and involvement in the intended illegal actions, adopted at Doc. 162 ).

### III. Conclusion and Recommendation

For the reasons discussed herein, **IT IS RECOMMENDED THAT**:

1.  The motion of Defendants Zang General Contractors, Inc. and of Joseph Zang Custom Builders for summary judgment (Doc.179) should be **GRANTED**;

2.  The pro hac vice status of Defendant Joseph C. Zang's counsel, Andrew M.

Smith, should be REVOKED;

3.    One or more substantial sanctions should be imposed upon Defendant Joseph C. Zang based upon his conduct in this litigation to date, including but not limited to his repeated failure to comply with his discovery obligations.  Specifically, the Court should prohibit Joseph C. Zang from introducing any evidence on his behalf not previously provided to Plaintiffs, including his own testimony, or alternatively, should strike the portions of the answer (Doc. 8) that relate to Joseph C. Zang, or render a default judgment against Joseph C. Zang. *See generally* Rule 37(b)(2)(A)(ii), (iii), and (vi), Fed. R. Civ. P.


 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge


**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO**

**WESTERN DIVISION**

CATHERINE J. ZANG, et al.,                                    Case No. 11-cv-884

        Plaintiffs                                                    Dlott, J.
                                                   Bowman, M.J.
   v.


JOSEPH ZANG, et al.,

        Defendants

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).